USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________
 
No. 99-1297

 MARIA TERESA PRADO,

 Petitioner,

 v.

 JANET RENO, ATTORNEY GENERAL 
 OF THE UNITED STATES,
 
 Respondent.
 
 ______________________
 
 PETITION FOR REVIEW OF AN ORDER OF THE
 
 BOARD OF IMMIGRATION APPEALS
 ______________________
 
 Before
 
 Torruella, Chief Judge,
 Wallace and Lynch, Circuit Judges.
 ______________________
 
 Patrick D. O'Neill, with whom Martinez, Odell & Calabria was
on brief, for petitioner.
 Linda S. Wernery, Attorney, Office of Immigration Litigation,
with whom David W. Ogden, Acting Assistant Attorney General, and
Kristen A. Giuffreda, Senior Litigation Counsel, were on brief, for
respondent.

 
 
 ______________________
 
 December 8, 1999
 ______________________
 
 LYNCH, Circuit Judge. Maria Teresa Prado appeals from a
Board of Immigration Appeals (BIA) final order of removal, or more
specifically, from the BIA's dismissal of her motion to reopen
earlier proceedings that had resulted in a decision to remove her. 
She is the mother of two children, both U.S. citizens, and the wife
of a U.S. citizen. 
 Prado asserts two claims on appeal. Her first claim is
that the BIA erred when it failed to exercise its authority under
8 C.F.R. 3.2(a) to reopen her case on its own motion, when her
motion to reopen was untimely. The Immigration and Naturalization
Service (INS) asserts that jurisdiction over this claim is barred
by Immigration and Naturalization Act (INA) 242(a)(2)(B), 8
U.S.C. 1252(a)(2)(B), a permanent provision of the Illegal
Immigration Reform and Immigrant Responsibility Act of 1996 
(IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546. INA
 242(a)(2)(B) states that "no court shall have jurisdiction to
review . . . any judgment regarding the granting of relief under .
. . [INA 245]." Section 245 of the INA, 8 U.S.C. 1255, governs
adjustment of status, the relief ultimately sought by Prado. If
 242(a)(2)(B) does not apply, the INS concedes there is statutory
jurisdiction under 242(b), 8 U.S.C. 1252(b).
 Prado also asserts that INS District Counsel should have
consented to her motion to reopen. If he had done so, then the
untimeliness of her motion to reopen would have been forgiven. See
8 C.F.R. 3.2(c)(3)(iii). The INS argues that INA 242(g), 8
U.S.C. 1252(g), which states that "no court shall have
jurisdiction to hear any cause or claim . . . arising from the
decision or action by the Attorney General to commence proceedings,
adjudicate cases, or execute removal orders," precludes our review
of this claim.
 We recently addressed similar jurisdictional questions
under IIRIRA's transitional rules in Mendes v. INS, No. 99-1226,
1999 WL 1045033 (1st Cir. Nov. 24, 1999), Luis v. INS, No. 99-1369,
1999 WL 997805 (1st Cir. Nov. 8, 1999), and Bernal-Vallejo v. INS,
No. 99-1211, 1999 WL 980300 (1st Cir. Nov. 2, 1999). Much of the
logic of our analysis in those cases applies here. In Bernal-
Vallejo, we held that "whether [IIRIRA] 309(c)(4)(E) precludes
jurisdiction depends on the precise grounds upon which the decision
of the [BIA] rests and the precise nature of the claims made in the
petition." Bernal-Vallejo, 1999 WL 980300, at *1. We hold today
that whether jurisdiction is removed by INA 242(a)(2)(B) requires
a similar inquiry, and that, in general terms, the section bars
the exercise of jurisdiction only where the BIA decision as to
which review is sought is a "judgment regarding the granting of
relief under" one of the enumerated sections. 
 In Prado's case, we conclude that INA 242(a)(2)(B) does
not preclude review of her claim that the BIA erred in failing to
reopen her case on its own motion. Other doctrines, however, do
preclude our review. 
 We further hold that we lack jurisdiction to review
Prado's claim that INS District Counsel should have consented to
her motion to reopen.
 I
 Prado is thirty-eight years old and is a native and
citizen of Venezuela. She is married to a United States citizen
and has two children under age ten, both of whom were born in the
United States. Prado entered the United States lawfully in
February, 1994, under a tourist visa which allowed her to visit
for five months. She overstayed. The INS instituted removal
proceedings against her with a Notice to Appear on April 4, 1997,
after she and her family had appeared before an INS officer in
San Juan to request information regarding what Prado needed to do
to become a citizen. On September 16, 1997, in proceedings
before an Immigration Judge (IJ), Prado admitted that she had
overstayed her visa and requested relief in the form of voluntary
departure under INA 240B, 8 U.S.C. 1229c. The IJ granted
this relief and allowed Prado to depart voluntarily by January
16, 1998, giving Prado the maximum period permitted under the
statute -- 120 days. See INA 240B(a)(2). Voluntary departure
was the only relief Prado sought before the IJ. She did not at
that time seek adjustment of status based upon her marriage to a
U.S. citizen, presumably because she had not yet procured the
requisite immediate relative visa. See INA 245(a); 8 C.F.R.
 245.2(a)(2). Prado's counsel was also given written notice
that Prado's failure to depart by January 16, 1998, absent
compelling circumstances beyond her control, would result in her
being ineligible for various forms of relief, including
adjustment of status under INA 245. If Prado wished to stay,
she had only 90 days to file a motion to reopen. See 8 C.F.R. 
3.2(c)(2).
 On November 19, 1997, the INS approved an immediate
relative visa petition that Prado's husband had filed on her
behalf, rendering Prado eligible to apply for adjustment of
status. A month later, on December 18, 1997, Prado did apply for
adjustment of status; however, she filed her application with the
INS District Director in Puerto Rico, when such an application
should have been filed, along with a motion to reopen, with the
IJ. See 8 C.F.R. 245.2(a)(1). Meanwhile, Prado had less than
one month remaining in her voluntary departure period.
 On January 7, 1998, nine days before her voluntary
departure date, Prado delivered a letter to the INS District
Director requesting an extension of the period "for the maximum
amount of time allowed under present regulations" so that she
could remain in the United States while her application for
adjustment of status was processed. The District Director denied
this request, explaining that Prado had already been granted the
maximum allowable time for her period of departure.
 On March 19, 1998, Prado filed a motion with the IJ to
reopen her removal proceedings so she could apply for adjustment
of status. She also requested the INS to join this motion. The
INS opposed Prado's motion to reopen because Prado's term for
voluntary departure had lapsed and she had not voluntarily
departed. On May 19, 1998, the IJ denied the motion.
 Prado appealed the denial of her motion to reopen to
the BIA. On March 2, 1999, the BIA dismissed her appeal on the
ground that the motion had been filed late. Prado's motion to
reopen needed to be filed within 90 days of the IJ's decision,
or, by December 15, 1997, but Prado had filed her motion to
reopen on March 24, 1998. The BIA noted that even if Prado's
improperly filed application for adjustment of status were deemed
the equivalent of filing a motion to reopen, this application was
still filed three days late, on December 18, 1997. Thus, the
request for adjustment of status has never been ruled on, largely
because Prado failed to take steps to present the issue in a
timely fashion.
II 
 Prado raises two issues before this court. First,
Prado asserts that given the exceptional circumstances of her
case, the BIA erred in failing to invoke its authority under 8
C.F.R. 3.2(a) to reopen her case sua sponte and allow her to
apply for adjustment of status. Second, Prado appeals the INS
District Counsel's refusal to join her motion to reopen. Both
parties agree that this case is subject to the jurisdictional
provisions of INA 242 because Prado was placed in deportation
proceedings after April 1, 1997.
 There is no dispute that Prado's motion to reopen was
untimely. Prado relies on the only two avenues available that
provide mechanisms for consideration of such an untimely motion. 
First, under 8 C.F.R. 3.2(a), the BIA may reopen "on its own
motion any case in which it has rendered a decision." Second,
under 8 C.F.R. 3.2(c)(3)(iii), the IJ could have entertained
Prado's untimely motion had the INS consented. 
A. Challenge Based on BIA's Authority to Reopen Sua Sponte
 The INS contends that INA 242(a)(2)(B) bars this
court from hearing Prado's claim that the BIA should have invoked
its sua sponte authority to reopen her case. We disagree. 
 The INS correctly points out that the prohibition in
INA 242(a)(2)(B), the permanent rule, is broader than the
prohibition in IIRIRA 309(c)(4)(E), the transitional rule. INA
 242(a)(2)(B) bars review of "any judgment regarding the
granting of relief under" enumerated sections of the INA, while
IIRIRA 309(c)(4)(E) precludes judicial review of "discretionary
decisions under" enumerated sections of the INA. Thus, the
permanent rules remove more than "discretionary decisions" from
review in the courts of appeals. 
 In Bernal-Vallejo, we held that review of certain non-
discretionary decisions, such as whether a minimum residency
period required for certain forms of relief, was not precluded
under IIRIRA 309(c)(4)(E). See Bernal-Vallejo, 1999 WL 980300,
at *3. The focus under INA 242(a)(2)(B), in contrast, is
on whether the BIA decision for which review is sought
constitutes a "judgment regarding the granting of relief under"
one of the enumerated sections. See INA 242(a)(2)(B). In this
case, then, the question is whether the BIA's dismissal of
Prado's appeal from the denial of the motion to reopen was a
"judgment regarding the granting of relief under" INA 245. We
conclude that it was not.
 IIRIRA has presented the courts with a tangle of
difficult jurisdictional issues. We have struggled to interpret
the provisions of the statute in light of congressional intent
and viewed against the backdrop of judicial rules of
interpretation. See, e.g., Mendes, 1999 WL 1045033; Luis, 1999
WL 997805; Bernal-Vallejo, 1999 WL 980300; Wallace v. Reno, Nos.
98-2317, 99-1596, 1999 WL 959538 (1st Cir. Oct. 26, 1999);
Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998). In Reno v.
American-Arab Anti-Discrimination Comm., 119 S. Ct. 936 (1999),
the Supreme Court taught that interpreting the jurisdiction
limiting provisions of IIRIRA requires a close textual reading
and that restrictions on jurisdiction should conform tightly to
the precise language chosen by Congress. See id. at 943-45.
 The INS's reading of 242(a)(2)(B) as precluding
review of any decision related to relief under an enumerated
section is plausible. But it is less plausible, we think, than
the reading we have chosen. The decision as to which Prado seeks
review is not a BIA judgment on whether to adjust Prado's status,
which would be a "judgment regarding the granting of relief
under" an enumerated section, but is rather a decision not to
reopen under 8 C.F.R. 3.2. The language of 242(a)(2)(B)
contrasts with the language of IIRIRA 309(c)(4)(G) that "there
shall be no appeal permitted in the case of an alien who is
inadmissable or deportable by reason of having committed [certain
enumerated offenses]." This court has viewed that language as an
absolute bar to review. See Ruckbi v. INS, 159 F.3d 18, 21 (1st
Cir. 1998). The close reading required by American-Arab and
Congress's different choice of language leads us to conclude that
 242(a)(2)(B) does not preclude review here.
 Why, it might be asked, should review of a decision
under INA 245 not to grant an adjustment of status be
precluded, while judicial review of the denial of a motion to
reopen to petition for adjustment of status is permitted? As
explained below, the window for review is narrow; because of
other doctrines of jurisdiction and judicial restraint, not all
denials of motions to reopen are reviewable. But as to those
denials of motions to reopen that are otherwise reviewable, there
are several reasons supporting this distinction in our reading of
INA 242(a)(2)(B). The INS has established procedures governing
motions to reopen an alien's case when new material information
becomes available. See 8 C.F.R. 3.2(c)(1) (motion to reopen
must be accompanied by statement of new facts previously
unavailable); see also Wright v. Ouellette, 171 F.3d 8, 9 (1st
Cir. 1999) (failure to introduce previously unavailable, material
evidence is grounds for dismissing motion to reopen). In pre-
IIRIRA cases, the denial of a motion to reopen was reviewed for
abuse of discretion. See Ananeh-Firempong v. INS, 766 F.2d 621,
626-29 (1st Cir. 1985) (failure to reopen was an abuse of
discretion where alien had alleged new facts making her prima
facie eligible for relief). The language chosen by Congress in
INA 242(a)(2)(B) does not evidence an intent to eliminate this
entirely rational, small safety valve -- court review that
ensures that the agency at least considers new information, even
if its ultimate and unreviewable judgment denies the relief
sought. It may also be that Congress wished the agency to live
by its rules. Congress may have desired court review to provide
a minimal control on administrative arbitrariness such as where a
motion to reopen is timely filed but the agency denies it on
grounds of untimeliness. The space left open for judicial review
is quite narrow, but it is not irrational for the window to be
open a crack, if not wide open.
 Our reading is also consistent with the reasoning in
Bernal-Vallejo and with the reasoning of other circuits. Arrozal
v. INS, 159 F.3d 429 (9th Cir. 1998), involved a BIA denial of a
motion to reopen to apply for suspension of deportation, a form
of relief enumerated in IIRIRA 309(c)(4)(E). See Arrozal, 159
F.3d at 431. The Ninth Circuit reasoned that the BIA's
discretionary denial of the motion was not a decision under the
section governing suspension of deportation, but instead was a
decision under the section pursuant to which the alien had been
ordered deported. See id. at 432. 
 In this case, the BIA dismissed Prado's appeal because
she had filed her motion with the IJ after the 90 day period
required under 8 C.F.R. 3.2(c)(2) had expired. The BIA never
reached the merits of Prado's application for adjustment of
status. Thus, the BIA's decision was a judgment under 8 C.F.R.
 3.2(c), not INA 245. Accordingly, INA 242(a)(2)(B) does
not preclude our review of Prado's claim that the BIA should have
invoked its sua sponte authority under 8 C.F.R. 3.2(a) to
reopen her case. Prado's claim, however, is not reviewable for
other reasons.
 Neither in her motion to reopen nor in her appeal from
the denial of her motion to reopen did Prado request the BIA to
invoke its sua sponte authority under 8 C.F.R. 3.2(a). Thus,
she did not exhaust her administrative remedies. "Usually issues
not raised before the BIA may not be raised for the first time on
a petition for review." Bernal-Vallejo, 1999 WL 980300, at *6;
see also INA 242(d)(1); Ravindran v. INS, 976 F.2d 754, 761
(1st Cir. 1992). 
 Even more importantly, because "the decision of the BIA
whether to invoke its sua sponte authority is committed to its
unfettered discretion," Luis, 1999 WL 997805 at *3, Prado's
claim is simply not justiciable. See id. at *3-4; see also
Heckler v. Chaney, 470 U.S. 821, 831-33 (1985); Massachusetts
Pub. Interest Research Group, Inc. v. United States Nuclear
Regulatory Comm'n, 852 F.2d 9, 14-19 (1st Cir. 1988). 
 We also note that the plain meaning of the regulation
suggests that the BIA could not have invoked its sua sponte
authority on behalf of Prado. The regulation allows the BIA to
reopen on its own motion "any case in which it has rendered a
decision." 8 C.F.R. 3.2(a). In this case, the BIA had not
rendered any decisions until it denied Prado's appeal; only the
IJ had rendered a decision. The regulation does not speak to the
BIA reopening on its own motion cases in which only an IJ has
rendered a decision.
B. Challenge Based on the INS's Decision to Oppose Reopening
 The INS argues that INA 242(g) precludes our review
of the INS's decision not to join Prado's motion. Because review
is precluded for other reasons, we do not address this question. 
 INA 242(b) grants this court jurisdiction to review
"order[s] of removal." Pre-IIRIRA, jurisdiction in the courts of
appeals was also limited to review of BIA final orders. See INA
 106, 8 U.S.C. 1105a (repealed); Cheng Fan Kwok v. INS, 392 U.S.
206, 212-13 (1968); Gottesman v. INS 33 F.3d 383, 386 (4th Cir.
1994); Lad v. INS, 539 F.2d 808, 809 (1st Cir. 1976). The
District Counsel's decision in this case was not a final order of
removal, and 242(b) does not grant the courts of appeals
jurisdiction to review the underlying decisions of the INS. See
American-Arab, 119 S. Ct. at 945 (nothing in INA 242
affirmatively grants jurisdiction to review the Attorney
General's decision to commence proceedings).
 Moreover, the INS's decision whether to consent to
reopening under 8 C.F.R. 3.2(c)(3)(iii) is not justiciable. 
The regulation prescribes no standards or guidelines for this
exercise of discretion, and, therefore, it is not subject to
review in this court. See Luis, 1999 WL 997805 at *3-4.
 As is true with time limits that American citizens are
required to meet, Prado was held to time limits, and she failed
to meet them. Whether the outcome -- removal from the United
States -- would have been the same had she complied with the time
limits and properly presented an application for adjustment of
status, no one knows. Under the INA as amended by IIRIRA, sadly
she will either be separated from her family, or, in order to
stay together, she and her family will have to leave this
country. Neither Congress nor the Constitution has given the
courts a role in this outcome.
 The petition for review is dismissed and the stay of
deportation is vacated. So ordered.